UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WAYNE JARMON,

        *Plaintiff*,

v.

CHRISTINE WORMUTH,

        *Defendant.*

No. 22-cv-3086 (DLF)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Wayne Jarmon brings this action under Title VII of the Civil Rights Act of 1964 alleging the Department of the Army denied him a promotion because of his race. Before the Court is defendant's Motion for Summary Judgment, Dkt. 19. For the reasons that follow, the Court will grant the motion.

**I.    BACKGROUND**

    Jarmon, an African American man, has worked as a high voltage electrician at the Washington Aqueduct, a Department of the Army workplace, for 20 years. Resp. to Pl.'s Facts ¶ 3, Dkt. 23-1; Jarmon Resume, Pl.'s Ex. 14, Dkt. 21-16. In 2017, during a hiring freeze, Jarmon worked a 120-day temporary position as an assistant supervisor. Resp. to Pl.'s Facts ¶ 9. During that time, Jarmon supervised four electricians. *Id.* ¶ 10. He applied to permanently work that same position in 2019 but was not hired. *Id.* ¶¶ 13, 17, 46. In 2020, the Department again announced a vacancy for a High Voltage Electrician Supervisor—the same role. *Id.* ¶ 25; Vacancy Announcement, Pl.'s Ex. 9, Dkt. 21-11. Jarmon interviewed for the position, but a three-member panel decided to hire Joshua Sprinkle, a white external candidate. Resp. to Pl.'s Facts ¶¶ 37–38.

Jarmon filed a formal complaint with the Army's Equal Employment Opportunity Office, alleging his non-selection for the supervisor position was on account of his race. Inv. File at 7–8, Def.'s Ex. 1, Dkt. 19-4. After investigating his claims, the Army concluded that Jarmon had not been discriminated against. Final Agency Decision, Def.'s Ex. 4, Dkt. 19-7. Jarmon then filed this instant suit.

## II.     LEGAL STANDARDS

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

It is well established, however, that "a plaintiff opposing summary judgment" must "substantiate [his allegations] with evidence" that "a reasonable jury could credit in support of each essential element of h[is] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.   ANALYSIS**

Where a plaintiff offers only circumstantial, rather than direct, evidence of discrimination, courts evaluate Title VII claims using the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010). Under that framework, the employee "must first make out a prima facie case" of discrimination. *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). The burden then shifts to the employer to "come forward with a legitimate reason for the challenged action." *Id.* If it satisfies that burden, the court "must conduct one central inquiry in deciding an employer's motion for summary judgment: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Id.* (internal quotation marks omitted). The D.C. Circuit has emphasized that "the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (cleaned up).

Because the defendant has offered a non-discriminatory reason—that Sprinkle had greater management experience and technical knowledge, Def.'s Mot. at 6—the Court considers only "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis," *Iyoha*, 927 F.3d at 566 (internal quotation marks omitted).

To do so, a plaintiff may present: "(1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions;

3

and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." *Holcomb*, 433 F.3d 897.  Jarmon points to his superior qualifications, irregularities in the hiring process, and independent evidence of discrimination.  None are persuasive.

*First,* a reasonable jury could not find that the defendant's nondiscriminatory reason was pretextual based on Sprinkle's and Jarmon's relative qualifications.  Although "[e]vidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination," liability under the anti-discrimination laws "cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates." *Fischbach*, 86 F.3d at 1183.  To establish pretext, "the qualifications gap [must be] 'great enough to be inherently indicative of discrimination'—that is, . . . the plaintiff [must be] 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (quoting *Holcomb*, 433 F.3d at 897).  Jarmon was not "markedly more qualified" than Sprinkle. *Id.* (internal quotation marks omitted).  Jarmon admits that he only had four months of management experience.  Pl.'s Stmnt. of Facts ¶ 46, Dkt. 21-1.  Sprinkle, by contrast, supervised electricians for six months. *Id.* ¶ 47.  And in their respective management roles, Jarmon only supervised four electricians, Resp. to Pl.'s Facts ¶ 10, while Sprinkle's role required him to oversee eleven to thirteen, Inv. File at 131, 135.

True, Jarmon, unlike Sprinkle, was already an employee at a water treatment plant.  Jarmon Resume, Pl's Ex. 14.  Although Jarmon argues his experience at the water treatment plant renders him "markedly more qualified," Opp'n at 3, Dkt. 21, he does not explain why it matters that

4

Sprinkle gained his electrician experience working for a different employer, *see Holcomb*, 433 F.3d at 896 (rejecting discrimination claim when hired employee's experience came from an outside position). Nor does it matter that Jarmon previously worked as a Series 2810 high voltage electrician, while Sprinkle had only worked as a Series 2805 electrician. Opp'n at 2–3. According to Jarmon, this means that Sprinkle did not have the requisite technical experience to fulfill the job requirements. *Id.* at 3–4. But that conclusion is not supported with "evidence that a reasonable jury could credit." *Grimes*, 794 F.3d at 94. For one, Jarmon has offered no evidence that Sprinkle could only have gained high voltage experience if his job included that in his title. Indeed, the opposite appears to be true. Jarmon does not meaningfully dispute that Sprinkle had previous experience supervising high voltage electricians—the exact role he was hired to perform. Sprinkle Int., Pl.'s Ex. 11, at 131, 135, Dkt. 21-13; Def's Stmnt. of Facts ¶ 41, Dkt. 19-2. Moreover, Jarmon does not meaningfully dispute that Sprinkle performed well on the technical portions of the interview, demonstrating qualifications for the high voltage electrician role. Def.'s Reply at 4–5, Dkt. 23; Inv. File. at 275, 285, 293–94. On this record, the Court cannot conclude that Jarmon was so substantially more qualified that a reasonable jury could infer discrimination.

*Second*, Jarmon fails to demonstrate any irregularities in the selection process. The hiring panel interviewed each candidate, asking both technical and qualitative questions. Sprinkle Interview Notes, Pl.'s Ex. 11; Jarmon Int. Notes, Pl.'s Ex. 12, Dkt. 21-14. They scored applicants on a matrix that evaluated electrical equipment knowledge, technical abilities, and troubleshooting skills. Resp. to Pl.'s Facts, ¶ 41. The matrix also incorporated the interview and references. *Id.* The panel then discussed each candidate and reached a decision. *Id.* ¶ 36. This thorough and detailed process, as well as the unanimous decision to hire Sprinkle, supports the Department's nondiscriminatory reason to prefer Sprinkle. Jarmon points to the panel's reliance on subjective

interviews, failure to grade or rate resumes, and use of the matrix as evidence of irregularity. But he fails to offer any evidence that the process diverged in any way from the Department's regular hiring method. And although he takes issue with the fact that he received a score of zero on one of the technical skillsets, his "own self-serving and conclusory" assertion that he should have scored higher is not sufficient at this stage. *Hastie v. Henderson,* 121 F. Supp. 2d 72, 81 (D.D.C. 2000). In sum, Jarmon's arguments amount to asking the Court to "second-guess an employer's initial choice of appropriate qualifications." *Jackson v. Gonzales*, 496 F.3d 703, 708 (D.C. Cir. 2007).

Even if Jarmon had offered evidence calling into question the interview process, his claim would still fail. The only person Jarmon ever claims acted out of discriminatory intent is his direct supervisor, Castro. Inv. File, at 12, 32. But Castro was only one out of the three panel members. And Jarmon concedes that all three panel members selected Sprinkle as the best candidate. Resp. to Pl.'s Facts ¶ 38. Nor does Jarmon offer material facts allowing a jury to conclude that Castro persuaded the other panel members to act discriminatorily. Opp'n at 7–8 (claiming that Castro "wielded enormous influence"). Even if Castro was influential, the undisputed facts show the panel members independently evaluated candidates in interview notes and continue to maintain Sprinkle was the best candidate. Sprinkle Interview Notes, Pl.'s Ex. 11; Jarmon Int. Notes, Pl.'s Ex. 12; Pl.'s Stmnt. of Facts ¶¶ 31–44.

*Third*, no reasonable jury would credit Jarmon's further evidence of discrimination. Jarmon points to a smattering of allegedly discriminatory actions, including his own non-selection for a promotion in 2019, and the allegedly discriminatory treatment of other black employees. Opp'n at 8–9. But Jarmon concedes that a different hiring panel made the 2019 hiring decision, Compl. ¶¶ 27–35, Dkt. 1, and he fails to demonstrate that he was significantly more qualified than

6

the candidate who was hired in 2019. He points to two other black employees who were only promoted after filing EEO complaints. Opp'n at 8–9. But the "mere filing of two informal discrimination complaints" with no more information "about the nature, merit, or outcome of those complaints," is insufficient to establish discriminatory animus. *Holcomb*, 433 F.3d at 899–900. And the fact that those two employees received a promotion further undermines Jarmon's claim. In sum, a reasonable jury could not find that the defendant's non-discriminatory reason was pretextual.

## CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion for summary judgment. Accordingly, it is

**ORDERED** that the defendant's motion for summary judgment is **GRANTED**. The Clerk of Court is directed to close this case. This is a final appealable order.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 24, 2025

7